IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMI WOODMAN,<br><br>              Plaintiff,<br><br>vs.<br><br>STANDARD INSURANCE<br>COMPANY, and DOES A-E,<br><br>              Defendants. | CV 20-153-M-KLD<br><br><br>ORDER |

Pending before the Court is Defendant Standard Insurance Company's ("Standard") Rule 12(b)(6) Motion to Dismiss Counts I, II, and IV of Plaintiff Jami Woodman's ("Woodman") Complaint. (Doc. 6.) Counts I, II, and IV respectively seek declaratory relief, allege breach of the covenant of good faith and fair dealing, and allege constructive fraud. (Doc. 1.) Standard also moves to dismiss Count III of the Complaint to the extent it alleges violations of Montana's Unfair Trade Practices Act ("UTPA") that are not redressable by private action. (Doc. 6.) Standard's motion is GRANTED in part and DENIED in part as set forth below.

I.   **Background**

Woodman submitted a claim for long-term disability coverage to Standard on February 13, 2018. At that time, Woodman was covered under a group insurance policy which Standard issued to Woodman's employer, Montana's

Eighth Judicial District Court. The policy provided long-term disability benefits for two periods: (1) the first 24 months of benefits paid (the "Own Occupation" period), and (2) the remaining coverage period thereafter (the "Any Occupation" period). Standard issued several payments to Woodman for long-term disability benefits pursuant to the first period of the policy.

Woodman began working for a new employer on February 19, 2019 and provided notice of her new employment to Standard on April 26, 2019. Standard continued to issue Woodman payments for long-term disability benefits through October 2019. On October 30, 2019, Standard informed Woodman that she had exhausted her long-term disability benefits available under the Own Occupation period of her policy. Standard denied Woodman further coverage based on its determination that Woodman was not disabled under the Any Occupation definition in the policy. Standard also claimed an overpayment of $1,367.61.

On October 15, 2020, Woodman brought this action against Standard seeking full long-term disability benefits under the policy. Woodman asserts five claims against Standard: (1) declaratory relief; (2) breach of the covenant of good faith and fair dealing; (3) violations of the UTPA; (4) constructive fraud; and (5) breach of contract. (Doc. 1.) Woodman claims Standard improperly and unlawfully denied her benefits under the policy causing her to suffer damages.

/ / /

## II. <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) when the complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). A plaintiff must state a claim for relief that is "plausible on its face" to survive a motion to dismiss. *Zixiang Li,* 710 F.3d at 999 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the Court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citation omitted).

However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association for the Advancement of Psychoanalysis v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citing *Halkin v. VeriFone, Inc.* 11. F.3d 865, 868 (9th Cir. 1993)). Additionally, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.2d 752, 754–55 (9th Cir. 1994). Finally, dismissal without leave to

3

amend is appropriate when it is "clear that the complaint cannot be saved by further amendment." *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

## III.   <u>Discussion</u>

### A.   **Count I – Declaratory Relief**

Standard argues that Woodman's claim for declaratory relief is preempted by the UTPA and must be dismissed. Standard explains that because Woodman seeks a declaration that her interpretation of the policy language is correct, she is requesting "nothing more than a judicial determination that her claims for violation of the UTPA and breach of contract have merit." (Doc. 7 at 6.) Standard argues the claim is improper since it is premised upon UTPA violations which have already accrued, and the UTPA does not provide for declaratory relief.

Woodman disputes Standard's characterization of her claim for declaratory relief as one premised upon the UTPA. Woodman argues the declarations she seeks "do not implicate unfair trade practices or remedy only past wrongs." (Doc. 12 at 6.) Instead, Woodman argues she seeks declarations limited to her contractual right to past, ongoing, and prospective long-term disability benefits.

Woodman's claim for declaratory relief neither explicitly cites the UTPA nor requests a declaration that Standard violated specific provisions of the UTPA. It nevertheless invokes the UTPA by seeking declarations concerning Standard's handling of Woodman's claim for benefits. For example, Woodman requests a

declaration that Standard was not entitled to adjust her claim in the manner it did, such as by claiming an offset. (Doc. 1 at ¶ 18.)

The UTPA provides that "[a]n insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory of cause of action." Mont. Code Ann. § 33-18-242(3). Pursuant to the UTPA's plain language, this Court has found declaratory relief to be an unavailable cause of action for statutory bad faith violations. *Garner v. USAA Gen. Indem. Co.*, 2019 WL 3306135, *5 (D. Mont. July 23, 2019); *Moe v. GEICO Indem. Co.*, 2020 WL 3396872, *4 (D. Mont. June 19, 2020); *Byorth v. USAA Cas. Ins. Co.*, 2019 WL 6715970, *2-5 (D. Mont. Dec. 10, 2019). While the UTPA is the appropriate channel for alleging an insurer improperly handled an insurance claim, the statue expressly limits an insured's available causes of action to breach of contract, fraud, or for violations of the UTPA. Declaratory relief is unavailable as a cause of action and as a remedy. Mont. Code Ann. § 33-18-242(1), (3).

Woodman attempts to evade the UTPA's limitations by omitting any reference to the statute in her claim for declaratory relief. However, the substance of Woodman's request for declaratory relief attacks Standard's handling of her insurance claim. A declaration by the Court that Standard "was not entitled to

claim a Deductible Income offset based on the entire amount of the workers' compensation benefits settled by Woodman" would serve as a declaration that Standard incorrectly handled Woodman's insurance claim, an issue governed by the UTPA. As explained, declaratory relief is neither a cause of action nor remedy provided by the statute. The Court therefore cannot grant Woodman her requested relief.

Even if some portion of Woodman's request for declaratory relief could be construed to not implicate the UTPA, Standard argues it would nevertheless fail because it is duplicative of Woodman's UTPA and breach of contract claims and therefore superfluous. The Court agrees. Woodman seeks declarations that Standard improperly handled her insurance claim and failed to provide her benefits to which she was entitled under the policy. These declarations are duplicative of the allegations contained in Woodman's UTPA and breach of contract claims and therefore "would serve no practical purpose beyond the remedies available under the UTPA [and through her breach of contract claim], which means this claim is subject to dismissal." *Moe v. GEICO Indem. Co.*, 2019 WL 5682511, *5 (D. Mont. July 25, 2019) (citing *Exxon Shipping Co. v. Airport Depot Diner, Inc.*, 120 F.3d 166, 168-69 (9th Cir. 1997) ("a declaratory judgment action must serve some purpose in resolving a dispute. If the relief serves no purpose . . . then the district court should not grant it.") and *Brunette v. Humane Soc. of Ventura County*, 40

Fed. Appx. 594, 598 (9th Cir. 2002) (declaratory relief inappropriate where it would serve "no purpose beyond the remedies . . . sought on [the] claims at law.")).

Woodman argues her declaratory relief claim seeks more than the remedies available through her UTPA and breach of contract claims by requesting prospective relief regarding her entitlement to future benefits. Specifically, Woodman points to her request for a declaration that she "was entitled to receive LTD benefits based on the Standard's Any Occupation definition of Disability". (Doc. 1 at ¶ 18.) Woodman construes this declaration as requesting the Court to determine the rate at which her Any Occupation benefits should be paid. Woodman argues this request implicates Standard's prospective obligations and cannot be remedied by her other causes of action.

Upon examination of Woodman's Complaint, the Court finds no request for prospective declaratory relief. (Doc. 1 at 6-7.) Each declaration Woodman seeks concerns past conduct - either Standard's allegedly improper claims handling or Woodman's failure to receive benefits she was allegedly entitled to. Woodman's construal of the sought declarations as prospective is therefore unsupported by her Complaint. Additionally, as aptly noted by Standard, Woodman's breach of contract claim alleges Standard breached the policy by "denying and withholding Woodman's LTD benefits based on the Standard's "Any Occupation" Definition

of Disability." (Doc. 1 at ¶ 37.) Resolution of Woodman's breach of contract claim will therefore govern Woodman's entitlement to Any Occupation benefits under the policy, rendering declaratory relief unnecessary. *See Exxon Shipping Co.*, 120 F.3d at 168-69 ("a declaratory judgment action must serve some purpose in resolving a dispute."); *Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, 2007 WL 2811080 (E.D. Mo. Sept. 24, 2007) (claim for declaratory relief should be dismissed where adjudication of accompanying breach of contract claim would render declaratory relief redundant); *Ng v. Wells Fargo Foothill LLC*, 2013 WL 12125565, *12 (C.D. Cal. Mar. 14, 2013) (collecting cases finding declaratory judgment unavailable where duplicative of breach of contract claim).

For the foregoing reasons, the Court finds Woodman's declaratory judgment claim should be dismissed.

## B.    Count II – The Covenant of Good Faith and Fair Dealing

Count II of Woodman's Complaint asserts a claim for breach of the covenant of good faith and fair dealing. Woodman alleges Standard "engaged in a continuous course of tortious conduct which breached [its] duty of good faith and fair dealing owed in relation to its contract with Woodman." (Doc. 1 at 8.) Woodman further alleges Standard's actions in violation of its duty forced Woodman "to assume the burden of legal action to obtain he full benefit of [the policy]." (Doc. 1 at 8.) Standard argues Count II should be dismissed because it is

either preempted by the UTPA or duplicative of Woodman's breach of contract claim.

A cause of action for breach of the covenant of good faith and fair dealing may survive a motion to dismiss if it is brought as breach of contract claim. The Montana Supreme Court has explained that the UTPA "preserves an insured's common-law right to bring a breach of contract claim. Every insurance contract includes a covenant of good faith and fair dealing . . . [a]n insured may recover [] damages for breach of this duty in a breach of contract action." *Draggin' Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, ¶ 29 (Mont. 2019). In *Oltz v. Safeco Ins. Co.*, 306 F. Supp. 3d 1243, 1258 (D. Mont 2018), this Court similarly found that "Montana law provides for breach of the implied covenant [of good faith and fair dealing] as a contract action[.]" Woodman defends dismissal of Count II by arguing it is properly asserted as a contract claim.

Woodman's claim for breach of the implied covenant of good faith and fair dealing does not require dismissal merely because Woodman asserted a separate breach of contract claim in Count V. Although both Count II and Count V are breach of contract claims, they are substantively different. Even if both claims are "analyzed as a breach of contract", they are not indistinguishable. *Atlantic Casualty Ins. Co. v. Quinn*, 2019 WL 2550978, *4 (D. Mont. June 20, 2019) (claims could be analyzed together where issue was whether a breach of contract is

a covered occurrence under the policy). *Compare with, Oltz*, 306 F. Supp. 3d at 1258 (where plaintiff alleged a breach of contract and a breach of the implied covenant of good faith and fair dealing as two separate causes of action, the court found that "Montana law provides for breach of the implied covenant as a contract action," but granted summary judgment to defendant upon factual showing that covenant was not breached.).

Count II focuses on Standard's conduct required by the implied covenant of good faith and fair dealing: "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *McCoy v. First Citizens Bank*, 148 P.3d 677, ¶21 (Mont. 2006) (citing Mont. Code Ann. § 28-1-211 and *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990) (overruled on other grounds)). Count V is conversely based on the violation of express contractual terms contained in the policy. Although Woodman could have jointly pled the claims in one count, she was not required to do so, and the claims nevertheless require individual consideration. *See, e.g. Puryer v. HSBC Bank USA*, 419 P.3d 105, ¶¶ 18-26 (Mont. 2018) (plaintiff pled claims jointly, but court provided two separate analyses for each theory of breach).

Woodman's claim alleging breach of the implied covenant of good faith and fair dealing is adequately pled. Woodman alleges Standard "acted and/or conspired to minimize or avoid altogether the contractual obligations owed Woodman under

Montana law . . . failed to provide information and details regarding its coverage position(s) . . . [and] engaged in a continuous course of such tortious conduct with such frequency to indicate a general business practice." (Doc. 1 at ¶ 23).[1] Woodman further alleges she is entitled to attorney fees due to Standard's unfair treatment which has forced her "to assume the burden of legal action to obtain the full benefit of [the policy]." (Doc. 1 at ¶ 24) *See Mlekush v. Farmers Ins. Exch.*, 404 P.3d 704, ¶ 20 (Mont. 2017) ("when a first-party insured buys insurance . . . [they do] so with the reasonable expectation that they will be treated fairly . . . but when they are compelled to sue for their benefits and they recover more at trial than was offered by the insurance company, they are entitled to recover attorney fees.") Taking Woodman's allegations as true and construing the Complaint in her favor, the Court finds Woodman's contract claim for breach of the implied warranty of good faith and fair dealing adequately states a claim under Rule 12(b)(6).

### C.    Count III – Unfair Trade Practices Act

Standard next requests dismissal of Woodman's allegations contained in Count III that do not give rise to independent causes of action under the UTPA.

---

[1] Although Woodman refers to her claim as brought pursuant to common law, the Court notes she is limited to a contract claim for breach of the covenant of good faith and fair dealing.   In other words, tort damages are not available for this claim.

The UTPA contains fourteen prohibited unfair claims settlement practices, but only six of those violations give rise to a private right of action. Mont. Code Ann. § 33-18-242(1) ("An insured or third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201"); *See also, Fossen v. Caring for Montanans, Inc.*, 993 F. Supp. 2d 1254 (D. Mont. 2014), *aff'd* 617 Fed. Appx. 737 (9th Cir. 2015).

Woodman's Complaint generally cites Mont. Code Ann. § 33-18-242 as the authority for her UTPA claim. (Doc. 1 at 9.) She asserts Standard violated the UTPA in eight specific ways, each provided for in the subsections of § 33-18-201. (Doc. 1 at ¶ 29.) However, three of Woodman's allegations are based on non-actionable subsections of § 33-18-201. Specifically, Woodman's allegations at paragraph 29 (B), (C), and (H), correspond with § 33-18-201(2), (3), and (14). These subsections do not fall within the UTPA's limited right of action. Mont. Code Ann. § 33-18-242(1).

Woodman reasons that although she alleged non-actionable violations of the UTPA in her Complaint, she is not asserting a claim for damages under § 33-18-201(2), (3), and (14). Rather, she requests damages only for Standard's alleged violations of the UTPA's actionable provisions. (Doc. 12 at 14.) Regardless, Woodman cannot assert private causes of action that are not recognized under the

UTPA. *See Reeves v. Safeco Ins. Co. of Illinois*, 2020 WL 4933620, *3 (D. Mont. Aug. 24, 2020) (plaintiff may not assert causes of action for non-actionable UTPA provisions). Accordingly, the allegations contained in Count III of Woodman's Complaint seeking to raise a claim for violations of the UTPA under § 33-18-201(2), (3), and (14) are dismissed.

### D.     Count IV – Constructive Fraud

Woodman's fourth cause of action alleges Standard engaged in constructive fraud by wrongfully and unlawfully handling her insurance claim. Standard argues Woodman's constructive fraud claim is precluded by the UTPA and must be dismissed.

"An insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action." Mont. Code Ann. § 33-18-242(3). There is no dispute that Woodman's allegations of constructive fraud occurred within the claims handling process, implicating the UTPA. The focus of the parties' disagreement is whether constructive fraud is distinct from "fraud" as an individual cause of action under the UTPA.

The Montana Supreme Court and this Court have commented on the differences between constructive fraud and actual fraud, with this Court

acknowledging the unresolved issue now before it: does "fraud" under the UTPA

encompass both constructive fraud and actual fraud? In *Hayes v. AMCO Ins. Co.*,

2012 WL 5354553, *3-6 (D. Mont. Oct. 29, 2012), this Court analyzed whether the

UTPA allowed negligent misrepresentation claims to proceed under the umbrella

of "fraud". The Court determined the UTPA did not permit such claims based on

Montana Supreme Court case law finding negligent misrepresentation to be

distinct from actual and constructive fraud. *Hayes*, 2012 WL 5354553, at *4

("Negligent misrepresentation has a lesser standard of proof than fraud. Rather

than requiring an intent to misrepresent, it requires a showing of a failure to use

reasonable care or competence in obtaining or communicating the information.")

(quoting *Barrett v. Holland & Hart*, 845 P.2d 714, 717 (Mont. 1992)).

Accordingly, this Court concluded that "[a] negligent misrepresentation claim is

barred under the [UTPA] to the extent that "fraud" as used in the Act, refers only

to 'actual fraud.'" *Hayes*, 2012 WL 5354553, at *4.

      To the extent "fraud" under the UTPA includes constructive fraud, this

Court found "whether negligent misrepresentation is 'fraud' is a closer question".

*Hayes*, 2012 WL 5354553, at *4. This Court explained that based on its elements,

"[c]onstructive fraud is essentially actual fraud without the element of intent and

has similar elements as negligent misrepresentation." *Hayes*, 2012 WL 5354552, at

*4. Additionally, case law commonly likens claims for negligent misrepresentation

as claims for constructive fraud. *Bottrell v. Am. Bank*, 773 P.2d 694 (Mont. 1989).

The Montana Supreme Court has nevertheless made clear that although the two

claims are similar, they are not the same and should not be routinely treated as

equivalent. *Bottrell*, 773 P.2d at 706 (explaining negligent misrepresentation

equates to constructive fraud only where the breach of a legal duty or some other

special circumstance exists). On that distinction, this Court concluded that "[s]ince

negligent misrepresentation is a different claim than actual or constructive fraud, it

is barred when a plaintiff's claims are covered by the [UTPA] . . . [i]t is

unnecessary to reach the question of whether constructive fraud constitutes "fraud"

under the [UTPA]." *Hayes*, 2012 WL 5354552, at *6.

The *Hayes* decision is helpful in identifying the differences between

constructive fraud and actual fraud, which Standard argues make clear the claims

are not co-extensive. Standard also relies on the definitions of the claims under

Montana law to highlight their different elements. Standard is correct that the

definitions of actual fraud and constructive fraud are indeed different. *See* Mont.

Code Ann. § 28-2-405 and § 28-2-406. But Standard ignores the associated code

section 28-2-404 titled "Kinds of Fraud" that states: "[f]raud is either actual or

constructive. Actual fraud is always a question of fact." Mont. Code Ann. § 28-2-

404. The question at hand is not whether actual fraud and constructive fraud differ,

it is whether "fraud" encompasses both actual and constructive fraud for the

purposes of being actionable under the UTPA.

Much of the uncertainty surrounding whether "fraud" under the UTPA includes both actual and constructive fraud stems from case law using the term "fraud" generally, without a modifier. This Court recognized this issue in *Hayes*, pointing out that both this Court and the Montana Supreme Court have used the term "fraud" in decisions that upon inspection "show that they were referring only to constructive fraud – not actual fraud." *Hayes*, 2012 WL 5354552, at *5. Similarly, these courts have also used the term "fraud" when referring only to actual fraud. *See e.g., Bank of America, N.A., v. Alexander*, 389 P.3d 1020, ¶ 18 (Mont. 2017) (listing the elements of "fraud" as the elements of actual fraud).

The Court cannot say at this time that, under the standards applicable to Rule 12(b)(6) motions to dismiss, Woodman's claim for constructive fraud is not plausible on its face. Taking all of Woodman's factual allegations as true, the Court finds Woodman has pleaded a plausible claim for constructive fraud and dismissal is not warranted at this time.

## IV.   <u>Conclusion</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 6) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Count I of Plaintiff's Complaint is **DISMISSED** with prejudice.

2.  Defendant's Motion to Dismiss Count II of Plaintiff's Complaint is **DENIED**.

3.  Count III of Plaintiff's Complaint is **DISMISSED** with prejudice to the extent Count III asserts causes of action for non-actionable UTPA provisions.

4.  Defendant's Motion to Dismiss Count IV of Plaintiff's Complaint is **DENIED**.

**IT IS ORDERED.**

DATED this 11th day of March, 2021.

_____
Kathleen L. DeSoto
United States Magistrate Judge